IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

CARLYN T. TESTAMARK,　　　　　　)
　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　)
　　　　　v.　　　　　　　　　　　)　　　Civil No. 3:16cv202 (REP)
　　　　　　　　　　　　　　　　)
NANCY A. BERRYHILL,　　　　　　　)
Acting Commissioner of Social Security,　)
　　　　Defendant.　　　　　　　　)
_____)

## REPORT AND RECOMMENDATION

On July 1, 2014, Carlyn T. Testamark ("Plaintiff") applied for Social Security Disability

Benefits ("DIB") and, on July 7, 2014, she applied for Supplemental Security Income ("SSI")

under the Social Security Act ("Act"), alleging disability from bipolar disorder, anxiety disorder,

panic disorder, attention deficit hyperactive disorder ("ADHD") and post-traumatic stress

disorder ("PTSD"), with an alleged onset date of October 25, 2013. The Social Security

Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration.

Thereafter, an Administrative Law Judge ("ALJ") denied Plaintiff's claims in a written decision

and the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as

the final decision of the Commissioner.

Plaintiff now seeks judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g),

arguing that the ALJ erred in properly weighing the medical opinion evidence, evaluating

Plaintiff's credibility and failing to reconcile inconsistencies between the testimony from the

Vocational Expert ("VE") and the Dictionary of Occupational Titles ("DOT"). (Mem. in Supp.

of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 9) at 13-23.) This matter now comes before

the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment, rendering the matter ripe for review.[1] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 7) and Motion to Remand (ECF No. 8) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 10) be GRANTED and that the final decision of the Commissioner be AFFIRMED.

## I.     PROCEDURAL HISTORY

On July 1, 2014, Plaintiff filed an application for DIB, and on July 7, 2014, she applied for SSI, both with an alleged onset date of October 25, 2013. (R. at 216-25.) The SSA denied these claims initially on August 27, 2014, and again upon reconsideration on November 19, 2014. (R. at 110-15, 120-30.) At Plaintiff's written request, the ALJ held a hearing on September 11, 2015. (R. at 27-66.) On November 9, 2015, the ALJ issued a written opinion, denying Plaintiff's claims and concluding that Plaintiff did not qualify as disabled under the Act, because Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 12-20.) On February 2, 2016, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision as the final decision of the Commissioner subject to review by this Court. (R. at 1-6.)

## II.     STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v.*

---

[1]     The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

*Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decision makers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. §§ 404.1520(a)(4),

416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's RFC accounting for the most that the claimant can do despite her physical and mental limitations. 20 C.F.R. §§404.1520(a), 416.945(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## III.    THE ALJ'S DECISION

On September 11, 2015, the ALJ held a hearing during which Plaintiff (represented by a non-attorney representative) and a VE testified. (R. at 27-66.) On November 9, 2015, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 12-20.)

The ALJ followed the five-step evaluation process established by the Social Security Act in analyzing Plaintiff's disability claim. (R. at 12-20.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (R. at 14.) At step two, the ALJ found that Plaintiff has the following severe impairments: bipolar disorder, anxiety disorder and PTSD. (R. at 14.) At step three, the ALJ found that Plaintiff did not have an

4

impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. (R. at 14-16.)

In assessing Plaintiff's RFC, the ALJ found that Plaintiff could perform a full range of work at all exertional levels but with certain non-exertional limitations. (R. at 16.) Specifically, the ALJ limited Plaintiff to simple, routine tasks. (R. at 16.) Plaintiff could never perform work involving quotas or direct interaction with the public. (R. at 16.) However, she could tolerate occasional interaction with coworkers. (R. at 16.) At step four, the ALJ found that Plaintiff could not perform any past relevant work. (R. at 18-19.) At step five, the ALJ determined that Plaintiff could perform jobs that exist in significant numbers in the national economy. (R. at 19-20.) Therefore, Plaintiff did not qualify as disabled under the Act.

## IV.    ANALYSIS

Plaintiff, fifty-three years old at the time of this Report and Recommendation, previously worked as a ticket agent at American Airlines. (R. at 33-34, 324-25.) Plaintiff applied for Social Security Benefits, alleging disability from bipolar disorder, anxiety disorder, panic disorder, ADHD and PTSD with an alleged onset date of October 25, 2013. (R. at 216-25, 330-33.) Plaintiff's appeal to this Court alleges that the ALJ erred in failing to properly weigh the medical opinion evidence, properly evaluate her credibility, and reconcile inconsistencies between the testimony from the VE and the DOT. (Pl.'s Mem. at 13-23.) For the reasons set forth below, the ALJ did not err in her decision.

## A. Substantial Evidence Supports the ALJ's Assignment of Weight to the Opinions of Dr. William Fuess, Dr. Alejandro Arias, Dr. Maria Del Sol and Dr. Cristina Grand, respectively.

Plaintiff argues that the ALJ erred in assigning little weight to the opinions of examining psychiatrists Maria Del Sol, M.D., and Cristina Grand, Psy.D., and some weight to the opinion of examining psychologist Alejandro Arias, Psy.D., while assigning considerable weight to the opinion of non-examining psychologist, William Fuess, Ph.D. (Pl.'s Mem. at 13-18.) Specifically, Plaintiff argues that the opinions of the three examining physicians warrant controlling weight, because the doctors provided medical support for their opinions and other medical evidence in the record comports with those opinions. (Pl.'s Mem. at 14.) Defendant responds that the ALJ appropriately assigned the weight to each medical source. (Def.'s Mot. for Summ. J. & Br. in Supp. ("Def.'s Mem.") (ECF No. 10) at 13-15.)

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that have been ordered. 20 C.F.R. §§ 404.1512(e), 416.912(e). When the record contains a number of different medical opinions, including those from the claimant's treating physician(s), consultative examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. 20 C.F.R. §§ 404.1512(c)(2), 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. §§ 404.1527(c)(2), (d), 416.927(c)(2), (d).

When considering a treating source's opinion, the ALJ must evaluate those findings just as any other medical opinion. 20 C.F.R. §§ 404.1527(e)(2)(ii); 416.927(e)(2)(ii). The ALJ must "explain in the decision the weight given to the opinions of a treating source . . ., as the [ALJ] must do for any opinions from nontreating sources and other nonexaming sources." 20 C.F.R. §§ 404.1527(e)(2)(ii); 416.927(e)(2)(ii). Determining the specific weight of medical opinions is especially important, because the regulations further require a comparative analysis of competing medical opinions. *See, e.g.,* 20 C.F.R. § 404.1527(c)(1) ("Generally, [the Commissioner] give[s] more weight to the opinion of a source who examined the claimant than to the opinion of a source who has not examined claimant.")

Requiring an ALJ to assign specific weight to medical opinions is necessary, because a reviewing court "faces a difficult task in applying the substantial evidence test when the [Commissioner] has not considered all relevant evidence." *Arnold v. Sec'y of Health Educ. & Welfare,* 567 F.2d 258, 259 (4th Cir. 1977). Unless the Commissioner "has sufficiently explained the weight [s]he has given to obviously probative exhibits, to say that h[er] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Id.* (quoting *Oppenheim v. Finch,* 495 F.2d 396, 397 (4th Cir. 1974)) (internal quotation marks omitted). The assignment of weight needs to be sufficiently specific "to make clear to any subsequent reviewers the weight the adjudicator gave to the . . . source's medical opinion and the reasons for that weight." SSR 96-2p (discussing affording weight to treating physician). Accordingly, a reviewing court cannot determine if substantial evidence supports an ALJ's findings "unless the [ALJ] explicitly indicates the weight given to all the relevant evidence." *Gordon v. Schweiker,*

725 F.2d 231, 235 (4th Cir. 1984) (citing *Myers v. Califano*, 611 F.2d 980, 983 (4th Cir. 1980);
*Strawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979); *Arnold*, 567 F.2d at 259)).
Courts generally should not disturb an ALJ's decision as to the weight afforded a medical
opinion absent some indication that the ALJ "dredged up 'specious inconsistences.'" *Dunn*, 607
F. App'x. at 267 (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an
ALJ's decision regarding weight afforded a medical opinion should remain untouched unless the
ALJ failed to give a sufficient reason for the weight afforded. 20 C.F.R. §§ 404.1527(d),
416.927(d).

The ALJ must consider the following when evaluating a treating source's opinion:
(1) the length of the treating source relationship and frequency of examination; (2) the nature and
extent of the treatment relationship; (3) supportability based upon the medical record;
(4) consistency between the opinion and the medical record; (5) any specialization on the part of
the treating source; and, (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c).
However, those same regulations specifically vest the ALJ — not the treating source — with the
authority to determine whether a claimant qualifies as disabled as the Act defines that term. 20
C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Although the regulations explicitly apply these
enumerated factors only to treating sources, those same factors may apply in evaluating opinion
evidence from "other sources." SSR 06-03p.

Here, the ALJ afforded considerable weight to Dr. Fuess' opinion because of its
consistency with the record. (R. at 17.) Dr. Arias' opinion received some weight, because the
ALJ determined that the record supported his assessment of Plaintiff's cognitive functions, but
not his assessment of Plaintiff's social functions. (R. at 17-18.) Finally, the ALJ assigned little
weight to the opinions of Dr. Del Sol and Dr. Grand because of inconsistencies between those

8

opinions and the evidence in the record. (R. at 18.) As explained below, substantial evidence in the record supports the weight that the ALJ afforded these medical opinions.

### 1. Dr. Fuess' Opinion

The ALJ assigned considerable weight to Dr. Fuess' opinion, because Dr. Fuess reviewed the record evidence, testified in his field of specialty and his testimony comported with evidence in the record. (R. at 17.) Based on his review and expertise, Dr. Fuess testified that Plaintiff did not consistently display psychotic thought process, but she had moderate impairment maintaining attention, concentration and interacting socially. (R. at 51-53.) Dr. Fuess opined that Plaintiff would have work-related limitations stemming from her impairments, including difficulty dealing with the public, coping with changes in the workplace and understanding complex, detailed instructions. (R. at 51-52, 57.)

The ALJ's decision to afford Dr. Fuess' opinion considerable weight finds support from medical evidence in the record. On October 8, 2012, Plaintiff began a series of monthly appointments at Compass Health Systems to treat her bipolar disorder and depression. (R. at 339-48.) Plaintiff appeared well-groomed, demonstrated good eye contact, appropriate thought process, clear associations and no signs of psychosis. (R. at 348.) Plaintiff had good insight, intact language, an excellent knowledge base, and she responded well to interventions. (R. at 348.) On November 5, 2012, and again on December 3, 2012, Plaintiff's condition remained largely the same, except that she demonstrated an average knowledge base. (R. at 346-47.)

On January 3, 2013, Plaintiff exhibited a moderately impaired memory. (R. at 345.) However, treatment notes from February and March 2013 indicated an intact memory and otherwise normal findings. (R. at 343-44.) On April 26, 2013, Plaintiff had fair insight and impaired memory, but over the next two months, she presented with good insight and an intact

9

memory. (R. at 340-42.) From April through June, Plaintiff's symptoms remained stable and controlled by medication. (R. at 340-42.) On August 14, 2013, Plaintiff had her last appointment at Compass Health Systems, and treatment records revealed noncompliance with her medications and otherwise stable, unremarkable results. (R. at 339.) These medical records comport with Dr. Fuess' testimony that Plaintiff did not consistently present with psychotic thought process.

On September 9, 2013, Dr. Del Sol examined Plaintiff, and found no serious mental abnormalities, depression, mood elevation, nor any suicidal or homicidal thoughts. (R. at 393-95.) Dr. Del Sol noted that Plaintiff had normal speech, intact memory and associations, logical thought process and content, normal concentration and attention spans, as well as no signs of hyperactivity. (R. at 393-95.) Dr. Del Sol diagnosed Plaintiff with Bipolar Disorder II and PTSD. (R. at 394.) Plaintiff's condition and diagnoses remained largely unchanged during her October 21, 2013 examination. (R. at 396-98.) In fact, Dr. Del Sol found Plaintiff's mood "entirely normal with no signs of depression or mood elevation." (R. at 396.)

On March 5, 2014, Ignacio Bobes, M.D. P.A., examined Plaintiff. (R. at 399-400.) During this examination, Plaintiff appeared calm and cooperative, but also sad, distracted and anxious. (R. at 399.) She spoke slowly and softly and demonstrated mild signs of anxiety and distractibility. (R. at 399.) However, Plaintiff showed no psychotic thought process, but instead she thought logically and did so with appropriate content. (R. at 399.) She showed intact memory and cognitive functioning as well as fair social judgment. (R. at 399.) Plaintiff then saw Dr. Del Sol again on June 11, 2014. (R. at 401-03.) Dr. Del Sol noted that Plaintiff communicated fully, with intact memory and appropriate thought content. (R. at 401.)

On July 21, 2014, Dr. Grand wrote a letter to the SSA stating that she had treated Plaintiff on and off since May 4, 2005. (R. at 485.) Notably, the record contains notes from only two appointments with Dr. Grand. (R. at 467-90.) In her letter, Dr. Grand opined that stressful situations aggravated Plaintiff's ability to cope, and that she had marked impairments maintaining attention, concentration, appropriate social skills and handling stress. (R. at 485.) Dr. Grand's letter marks the first evidence in the record of severe symptoms.

On September 11, 2014, Plaintiff returned to Dr. Grand, who noted Plaintiff's noncompliance with her medication and that she sometimes left her wallet at home. (R. at 469-71.) Plaintiff experienced panic attacks, difficulty coping, poor sleep and difficulty maintaining a normal routine. (R. at 469.) Dr. Grand noted similar symptoms during her last appointment with Plaintiff on November 14, 2014. (R. at 467-68.) Plaintiff reported having panic attacks and not sleeping well. (R. at 468.) Dr. Grand found her motivated and talkative, though anxious. (R. at 467.)

On September 17, 2014, Dr. Del Sol maintained Plaintiff's Bipolar Disorder II diagnosis. (R. at 404-05.) Plaintiff returned to Dr. Del Sol on November 13, 2014. (R. at 502-04.) During this appointment, Dr. Del Sol found Plaintiff calm, cooperative and fully oriented, with intact memory and logical thought. (R. at 502.) Dr. Del Sol noted only mild signs of anxiety. (R. at 502.) The medical evidence from 2013 and 2014 shows the effects of depression and anxiety on Plaintiff's ability to cope, yet it also shows that her condition remained relatively stable and improved with medication.

On February 23, 2015, Plaintiff appeared sad, quiet and casually groomed, and she spoke slowly and softly. (R. at 505-07.) Dr. Del Sol noted moderate-to-severe signs of depression, and that Plaintiff exhibited signs psychotic process and tangential thinking. (R. at 505.) Yet,

11

Plaintiff displayed intact memory and cognitive functioning, possessed fair judgment and acted alert. (R. at 505.) Dr. Del Sol increased Plaintiff's dosage of Lamictal, gave her samples of Latuda, and discontinued her Seroquel prescription. (R. at 507.) Plaintiff's condition remained the same on April 17, 2015, and Dr. Del Sol took Plaintiff off of Latuda and started her on Depakote for mood stabilization. (R. at 505, 508, 510.) During this appointment, Plaintiff stated that she read three to four 500-page books each week. (R. at 508.)

On June 1, 2015, Dr. Del Sol again diagnosed Plaintiff with PTSD, after ruling out that diagnosis in February, and she discontinued Plaintiff's Depakote prescription. (R. at 506, 511.) On June 10, 2015, Plaintiff again appeared sad and communicated very little, but she reported feeling calmer and less anxious. (R. at 513.) Dr. Del Sol decreased Plaintiff's Lamictal dosage and took her off of Ambien. (R. at 514.)

Overall, the objective medical evidence in the record supports the ALJ's decision to afford considerable weight to Dr. Fuess' opinion. Specifically, treatment notes from Dr. Del Sol, Dr. Bobes and Compass Health System indicate that Plaintiff consistently appeared well-groomed and maintained good eye contact. (R. at 339-48, 393-95, 399-403.) She had intact memory, normal attention span, as well as fair insight and judgment. (R. at 339-48, 393-95, 399-403, 502, 505, 508, 511.) Plaintiff responded well to interventions after failing to take her medication. (R. at 343, 345, 347.) Further, after she began to take her medication again, her symptoms improved. (R. at 339, 396, 401.) Plaintiff did not demonstrate any signs of psychosis or suicidal ideations. (R. at 339-48, 393-95, 399-403.) These findings support Dr. Fuess' conclusion that Plaintiff did not suffer from psychotic thought processes. This evidence in the record also comports with Dr. Fuess' opinion that Plaintiff would have some minor difficulties in the workplace. Plaintiff had a fair knowledge base and a moderately impaired memory on

multiple occasions, and she became easily distracted. (R. at 344-47, 396-400.) Plaintiff demonstrated signs of depression and difficulty maintaining a normal routine. (R. at 407, 469.)

Plaintiff's own statements and admitted daily activities further align with Dr. Fuess' opinion that she had only moderate limitations in certain areas. She could use a microwave, sweep, clean her kitchen, shop for groceries, drive and take public transportation, but she sometimes forgot to take out her trash. (R. at 35-36, 41.) She testified that she enjoyed reading, writing, sketching, painting, listening to music and watching movies, though she did not do these activities as often as she had when she worked. (R. at 37-38.) She lived alone, managed her own finances and acknowledged that her medications "usually help quite a bit" to control her symptoms. (R. at 32, 44, 48.) These activities demonstrate that Plaintiff could perform a variety of daily tasks and activities despite her limitations.

Based upon the objective medical evidence and Plaintiff's daily activities, substantial evidence in the record supports the ALJ's assignment of considerable weight to Dr. Fuess' opinion.

## 2. Dr. Arias' Opinion

The ALJ assigned some weight to Dr. Arias' opinion citing consistencies between his cognitive limitations assessment and the findings in the record. (R. at 17.) The ALJ gave less weight to Dr. Arias' assessment of Plaintiff's social limitations assessment due to inconsistencies with the record evidence. (R. at 17.) Dr. Arias conducted Plaintiff's last physical examination in the record on September 3, 2015. (R. at 491-95, 497-500.) In his Mental Impairment Questionnaire ("MIQ")[2], Dr. Arias did not find Plaintiff to have marked limitations in any functional area. (R. at 494.) Dr. Arias opined that Plaintiff had moderate-to-marked limitations:

[2]     In an MIQ, a medical source notes the span of a claimant's treatment history and details the signs, symptoms and degrees of limitation that the claimant's impairments cause.

maintaining attention and concentration for extended periods; performing activities within a schedule and consistently being punctual; completing a workday without interruptions from psychological symptoms; and, maintaining socially appropriate behavior. (R. at 494.) Dr. Arias further opined that Plaintiff had no-to-mild limitations in twelve areas of mental ability, including remembering locations and work-like procedures, carrying out one- to two-step instructions, making simple work-related decisions, and maintaining basic standards of neatness. (R. at 494.)

### a. Plaintiff's Cognitive Limitations

Treatment notes from Dr. Del Sol, Dr. Bobes and Compass Health Systems as well as Dr. Fuess' testimony indicate that Plaintiff at times had a moderately impaired memory and concentration, and she exhibited fair insight, judgment and distractibility. (R. at 51-52, 342, 345-47, 399-400, 502, 505, 508.) She showed mild signs of anxiety. (R. at 399-400, 502, 505, 508.) Plaintiff also had difficulty maintaining a normal routine and suffered from panic attacks. (R. at 469.)

This evidence comports with Dr. Arias' opinion that Plaintiff had moderate-to-marked limitations maintaining attention and concentration for extended periods, performing activities within a schedule and consistently being punctual, as well as completing a workday without interruptions. (R. at 494.) Thus, substantial evidence supports the ALJ's decision to afford some weight to Dr. Arias' opinion regarding Plaintiff's cognitive limitations.

### b. Plaintiff's Social Limitations

While the record corroborates Dr. Arias' cognitive limitations assessment, the evidence does not support such restrictive social limitations as he opined. (R. at 494.) Plaintiff appeared well-groomed, cooperated and maintained eye contact. (R. at 339-48, 396-98, 502, 513.) She

exhibited fair or good social judgment, insight and thought, and spoke normally and with appropriate content. (R. at 339-48, 393-95, 399, 502, 505, 508, 513.) Plaintiff did not demonstrate signs of hyperactivity. (R. at 393-95.) Though she spent most of her days at home alone, she spoke with one of her sisters, and before her one friend passed away, they would spend time talking, laughing and listening to music. (R. at 36-38, 42.)

This evidence demonstrates that although she remained depressed and anxious, Plaintiff retained social abilities beyond those opined by Dr. Arias. Further, the record contains no evidence to support Dr. Arias' opinion that Plaintiff had moderate-to-marked difficulty engaging in socially appropriate behavior. Consequently, the ALJ did not err in assigning some weight to Dr. Arias' opinion.

### 3. Dr. Del Sol's Opinion

The ALJ assigned little weight to Dr. Del Sol's opinion because of inconsistencies with findings in the record. (R. at 18.) On September 24, 2014, Dr. Del Sol completed an MIQ. (R. at 406-10.) Dr. Del Sol opined that Plaintiff exhibited an irritable and labile mood, as well as obsessive and compulsive thoughts. (R. at 407.) She had difficulty concentrating, and she exhibited distractibility, anxiousness and suspiciousness. (R. at 407.) Plaintiff had decreased energy, and she reported intense and unstable interpersonal relationships. (R. at 407.)

After identifying Plaintiff's symptoms, Dr. Del Sol opined that Plaintiff had moderate-to-marked limitations in the following areas of functioning: remembering locations and work-like procedures; understanding, remembering and carrying out one- to two-step instructions; sustaining an ordinary routine unsupervised; making simple work-related decisions; asking simple questions or requesting assistance; maintaining socially appropriate behavior; adhering to

basic standards of neatness; responding appropriately to workplace changes; being aware of hazards and taking appropriate precautions; and, independently making plans. (R. at 409.)

Dr. Del Sol further opined that Plaintiff had marked limitations in the following areas: understanding, remembering or carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule and consistently being punctual; working in coordination with or near others without distraction; completing a workday without interruptions from psychological symptoms; performing at a consistent pace without rest periods of unreasonable length; interacting appropriately with the public; accepting instructions and responding appropriately to criticism; getting along with coworkers; traveling to unfamiliar places and using public transportation; and, setting realistic goals. (R. at 409.) Dr. Del Sol concluded that Plaintiff would miss work more than three times per month due to her impairments. (R. at 410.) Medical evidence in the record and Dr. Del Sol's own treatment notes support the ALJ's assignment of little weight to her opinion.

From October 8, 2012 until August 14, 2013, Compass Health Systems physicians examined Plaintiff nine times. (R. at 339-48.) During each appointment, Plaintiff appeared well-groomed, with good eye contact (except during one appointment), intact language and no signs of psychosis. (R. at 339-48.) Plaintiff routinely exhibited an average, if not excellent, knowledge base. (R. at 339-48.) She had an intact memory during all but two examinations. (R. at 339-48.)

Plaintiff generally demonstrated good reliability and no limitations in concentration or attention. (R. at 339-48.) During her examinations at Compass Health Systems and with Dr. Del Sol, she also demonstrated good eye contact and insight, had an intact memory, remained alert and thought logically. (R. at 339-48, 393-95, 399-403.) Plaintiff demonstrated no signs of

hyperactivity, she acted in a cooperative and calm manner, and had fair cognitive functioning and social judgment. (R. at 339-48, 399-400.)

Indeed, the record confirms that Plaintiff's mental impairments cause her anxiety. However, the record does not show the level of debilitation that Dr. Del Sol opined. Further, the ALJ precluded Plaintiff from having any direct interaction with the public and restricted her to simple, routine tasks and only occasional interaction with coworkers. (R. at 16.) These restrictions adequately account for Plaintiff's substantiated limitations. Thus, the evidence in the record does not corroborate Dr. Del Sol's ultimate opinion. As described above, substantial evidence in the record supports the ALJ's assignment of little weight to that opinion.

### 4. Dr. Grand's Opinion

Similarly, the ALJ properly assigned little weight to Dr. Grand's opinion. Her opinion conflicts with the record in the same way as Dr. Del Sol's opinion. (R. at 18.) Dr. Grand completed an MIQ on August 6, 2015, almost one year after Dr. Del Sol had completed her assessment. (R. at 410, 486-90.) Dr. Grand's opinion reflected many similar limitations to those opined by Dr. Del Sol. (*Compare* R. at 489-90 (Dr. Grand opining that Plaintiff has eleven areas of marked, seven areas of moderate-to-marked, two areas of moderate, and three areas of none-to-mild limitation) *with* R. at 409-10 (Dr. Del Sol opining that Plaintiff has twelve areas of marked and eleven areas of moderate-to-marked limitation).) Indeed, in at least five mental activities, Dr. Grand placed even more restrictive limitations on Plaintiff's abilities than Dr. Del Sol. (R. at 409, 489.) Dr. Grand opined that Plaintiff had marked limitations in: remembering locations and work-like procedures; understanding and remembering one- to two-step instructions; maintaining attention and concentration for extended periods; performing activities on a schedule and with punctuality; completing a workday without interruptions from

17

psychological symptoms; performing at a consistent pace without unreasonably long rest periods; accepting instructions and responding appropriately to criticism; getting along with coworkers; responding appropriately to workplace changes; setting realistic goals; and, independently making plans. (R. at 489.)

Dr. Grand further opined that Plaintiff had moderate-to-marked limitations in: carrying out one- to two-step instructions; sustaining an ordinary routine unsupervised; working with others without distraction; making simple, work-related decisions; interacting appropriately with the public; asking simple questions or requesting assistance; and, maintaining socially appropriate behavior. (R. at 489.) Like Dr. Del Sol, Dr. Grand concluded that Plaintiff's impairments would cause her to miss work more than three times per month. (R. at 410, 490.)

As previously noted, Plaintiff demonstrated good eye contact, insight, judgment, concentration and attention. (R. at 339-48, 394, 396, 399, 401, 502, 505, 508, 513.) With routine, Plaintiff's treating physicians noted her alertness and logical thought process. (R. at 339-48, 393-95, 399-403, 502, 513.) She showed no signs of hyperactivity or suicidal thoughts, remained cooperative and calm and had fair cognitive functioning and social judgment. (R. at 339-48, 399-400.)

Consequently, the evidence in the record does not corroborate the restrictive limitations opined by Dr. Grand. Instead, as with Dr. Del Sol's opinion, substantial evidence supports the ALJ's assignment of little weight to Dr. Grand's opinion.

### B. Substantial Evidence Supports the ALJ's Assessment of Plaintiff's Credibility.

Plaintiff argues that the ALJ erred in concluding that Plaintiff's credible testimony on her impairments did not lead to an ultimate finding of disability. (Pl.'s Mem. at 19-20.) She alleges that, despite finding her statements generally credible, the ALJ failed to sufficiently support the

determination that Plaintiff did not qualified as disabled. (Pl.'s Mem. at 20.) In response, Defendant notes that an ALJ's credibility finding warrants such great deference that it stands "virtually unreviewable" by a court. (Def.'s Mem. at 15 (additional citations omitted).) Further, Defendant argues that medical evidence in the record and Plaintiff's own statements support the ALJ's credibility determination. (Def.'s Mem. at 16-19.)

After step three of the ALJ's sequential analysis but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. §§ 404.1529(a), 416.929(a); SSR 96-7p.

First, the ALJ determines whether an underlying medically determinable physical or mental impairment or impairments exist that reasonably could produce the individual's pain or other related symptoms. *Id.*; SSR 96-7p, at 1-3. In doing so, the ALJ must consider all of the medical evidence in the record. *Craig*, 76 F.3d at 594-95; SSR 96-7p, at 5 n.3; SSR 96-8p, at 13. If the underlying impairment reasonably could produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d at 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. *Eldeco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." *Eldeco, Inc.*, 132 F.3d at 1011 (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

An ALJ appropriately considers medication and treatment used to alleviate a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). If the claimant requires only conservative treatment, an ALJ is reasonable in holding that the alleged disability lacks the seriousness that the claimant alleges. *Dunn*, 607 F. App'x at 274-75. Similarly, noncompliance with a treatment regimen can indicate a claimant's lack of credibility as to the severity of the alleged symptoms, as well. *Id.* at 275-76.

Here, the ALJ found that Plaintiff's medically determinable impairments "could reasonably be expected to produce the alleged symptoms," and deemed Plaintiff's testimony "generally credible" concerning the intensity, persistence and limiting effects of her symptoms. (R. at 17.) However, the ALJ found Plaintiff's limitations not disabling in light of her testimony and her improvement when compliant with her medications. (R. at 17.)

Plaintiff's testimony supports the ALJ's credibility determination and her ultimate conclusion of non-disability. Specifically, Plaintiff stated that she rode public transportation, drove, performed some daily chores, and improved when she took her medications. (R. at 35-36,

44, 46.) Plaintiff worked as an airline ticket agent for twenty-six years until her termination for failing to report money that she had lost. (R. at 34.) After she stopped working, she stopped doing activities that she enjoyed like writing and painting, and instead started sleeping for much of the day. (R. at 37-38, 40.) Yet, Plaintiff lived alone, did her own grocery shopping, microwaved her meals and managed her own finances. (R. at 32, 35-36, 48.) She also noted that her medications improved her daily life and helped control her symptoms. (R. at 44, 46.) Plaintiff recalled her treatment history and distinguished between the positions of Dr. Del Sol, a psychiatrist, and Dr. Grand, a psychologist. (R. at 44-45.) Plaintiff's testimony demonstrates that, though she remained depressed and anxious, she could take care of herself and communicate relevant information from her past in detail. This evidence comports with the ALJ's determination that Plaintiff, though credible, retained some capacity to work.

As detailed above, objective medical evidence in the record also supports the ALJ's decision that Plaintiff testified credibly but ultimately did not qualify as disabled. Plaintiff appeared well-groomed and demonstrated an intact memory and a normal attention span. (R. at 339-48, 394, 396, 399-401, 502, 505, 508, 513.) Plaintiff exhibited fair insight and judgment, and she also responded well to interventions after failing to take her medications. (R. at 339-48, 393-96, 399-403, 502, 505, 508, 511.) Plaintiff admitted that after she began taking her medications again, her symptoms improved. (R. at 339, 396, 401, 404.) With rare exception, Plaintiff did not demonstrate signs of psychosis, and she denied any suicidal thought. (R. at 339-48, 393-95, 399-403, 412, 508.) She had intact cognitive functioning and fair social judgment. (R. at 339-48, 399-400, 502, 505, 508, 513.)

This medical evidence of record demonstrates that Plaintiff cared for herself, improved on medication and did not qualify as disabled based on her testimony alone. Along with portions

of Plaintiff's own testimony, this objective medical evidence constitutes substantial evidence in the record to support the ALJ's credibility determination.

### C. The ALJ Properly Relied Upon the VE's Testimony, because No Apparent Conflict Existed Between the VE's Testimony and the DOT.

Plaintiff argues that the ALJ erroneously relied on testimony from the VE that directly conflicts with the DOT without taking the required steps to resolve the discrepancy. (Pl.'s Mem. at 21-22.) Specifically, Plaintiff asserts that the ALJ must identify apparent conflicts between the VE's testimony and the DOT and obtain a reasonable explanation for the conflict before she can rely on the VE's testimony to support her decision. (Pl.'s Mem. at 22-23.) Defendant responds that no apparent conflict exists here between the testimony of the VE and the DOT to warrant remand. (Def.'s Mem. at 19-22.)

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience and RFC, the claimant could perform other work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(g), 404.1566, 416.920(g), 416.966. The Commissioner can carry her burden in the final step with the testimony of a VE. §§ 404.1566(e), 416.966(e). During an administrative hearing, the ALJ must pose hypothetical questions to the VE that accurately represent the claimant's RFC, so that the VE can offer testimony about any jobs existing in the national economy that the claimant could perform. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989). In *Pearson v. Colvin*, the Fourth Circuit explained the responsibilities of the ALJ regarding the VE testimony. 810 F.3d 204, 208-10 (4th Cir. 2015).

First, the ALJ must ask the VE whether his testimony conflicts with the DOT. *Id.* at 208; SSR 00-4p at 4. Second, and independent of the first step, the ALJ must obtain an explanation of apparent conflicts. *Pearson*, 810 F.3d at 208-09; SSR 00-4p at 4. Indeed, the ALJ need not

address any and every conflict, nor can she address only obvious ones. *Pearson*, 810 F.3d at 209. Instead, the Fourth Circuit interprets apparent conflicts as those in which the VE's testimony "seems to, but does not necessarily, conflict with the [DOT]." *Id.* For example, an apparent conflict exists when an ALJ limits a claimant to only occasional overhead reaching, and the DOT lists frequent reaching as a requirement for all of the jobs identified by the VE. *Id.* at 210.

Here, the ALJ asked the VE whether the VE's testimony stood consistent with the language in the DOT, and the VE stated that it did. (R. at 64.) The VE had testified that an individual of Plaintiff's age, education, work experience and RFC could work as a landscaper, a linen room attendant and a day worker. (R. at 60-62.) According to the DOT, the work of a landscaper (DOT No. 406.687-010, 1991 WL 673342) and a day worker (DOT No. 301.687-014, 1991 WL 672654) demands a Reasoning Level of 2, which requires carrying out detailed but uninvolved written and oral instructions.[3] These jobs also have a Specific Vocational Preparation Level ("SVP")[4] of 2, which corresponds with unskilled work. SSR 00-4p at *3; DOT Nos. 301.687-014, 406.687-010.

---

[3]    A linen room attendant (DOT No. 222.387-030, 1991 WL 672098) has an SVP of 2 and Reasoning Level 3. Where Reasoning Level 2 limits claimants to application of "detailed but uninvolved" instructions, Reasoning Level 3 contains no such limitation. *Compare* DOT No. 406.687-010 (explaining Reasoning Level 2) *with* DOT No. 222.387-030 (explaining Reasoning Level 3). Because the ALJ limited Plaintiff to simple, routine tasks, and the VE offered other jobs that require only a Reasoning Level of 2, the Court will ignore the linen room attendant position and instead determine whether the Reasoning Level 2 jobs, as defined by the DOT, conflict with the VE's testimony.

[4]    The DOT defines the SVP as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information and develop the facility needed for average performance in a specific job-worker situation. DICTIONARY OF OCCUPATIONAL TITLES, App'x C, 1991 WL 688702 (4th ed. 1991). Jobs with an SVP level 2 require "anything beyond [a] short demonstration up to and including 1 month." *Id.*

Before *Pearson*, this Court found that no apparent conflict existed between an RFC that limited the claimant to simple, routine, unskilled work and jobs with an SVP of 2. *Marrow v. Colvin*, 2014 WL 4467271 at *16-17 (E.D. Va. Sept. 10, 2014). Post-*Pearson*, other district courts in this Circuit have likewise found no apparent conflicts between a limitation to simple, routine tasks and jobs that required a Reasoning Level of 2. *See, e.g.*, *Proctor v. Colvin*, 2016 WL 6822477 at *9 (D. Md. Nov. 18, 2016) (finding Reasoning Level 2 consistent with simple, routine tasks) (additional citations omitted); *Gautreau v. Colvin*, 2016 WL 1314314 at *11-12 (E.D. Va. Feb. 26, 2016) (affirming the ALJ's decision where the RFC limited the claimant to simple, routine tasks and the VE offered jobs with Reasoning Levels 1, 2 and 3); *but see Watson v. Colvin*, 2017 WL 694645 at *3-5 (D.S.C. Feb. 22, 2017) (remanding for the ALJ to determine in the first instance whether VE testimony accounted for multiple mental limitations in the RFC and remained consistent with Reasoning Level 2 jobs in the DOT). By contrast, an apparent conflict would arise between an RFC restricting a claimant to one- to two-step instructions and Reasoning Level 2. *Henderson v. Colvin*, 643 F. App'x 273, 276-77 (4th Cir. 2016).

The ALJ limited Plaintiff to work consistent with unskilled jobs requiring an SVP of 2, including landscaper and dayworker. DOT Nos. 301.687-014, 406.687-010. Additionally, the ALJ limited Plaintiff to simple, routine tasks consistent with the detailed *yet uninvolved* instructions involved in positions requiring a Reasoning Level of 2. DOT Nos. 301.687-014, 406.687-010 (emphasis added). (R. at 16.) Had the record supported an RFC that restricted Plaintiff to no more than one- to two-step instructions, like the claimant in *Henderson*, then an apparent conflict would have existed for the ALJ to address. But Plaintiff's case presents no such conflict. Thus, the ALJ discharged her responsibility when she asked the VE about the consistency between his opinion and the DOT. Because no apparent conflict existed — and not

24

merely because the VE testified that none existed — the ALJ did not need to obtain further explanation. Thus, the ALJ complied with *Pearson*, and substantial evidence supports her decision.

V.     CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 7) and Motion to Remand (ECF No. 8) be DENIED, that Defendant's Motion for Summary Judgment (ECF No. 10) be GRANTED and that the Commissioner's final decision be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to Senior United States District Judge Robert E. Payne and to all counsel of record.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____ /s/

David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date:   August  21, 2017